# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                          No. CR 16-1613 JB

ANTHONY RAY BACA, a.k.a. "Pup";
CHRISTOPHER GARCIA; MANUEL
JACOB ARMIJO, a.k.a. "Big Jake";
FREDERICO MUNOZ, a.k.a. "Playboy";
SERGIO LOYA RODRIGUEZ, a.k.a
"Churro"; MANUEL BENITO, a.k.a.
"Panther"; VINCENT GARDUÑO a.k.a.
"Fatal"; MANDEL LON PARKER, a.k.a.
"Chuco"; DANIEL ARCHULETA, a.k.a.
"Smurf"; DANIEL SANCHEZ, a.k.a.
"Dan Dan"; ANTHONY CORDOVA,
a.k.a. "Antone"; and ARTURO
ARNULFO GARCIA, a.k.a. "Shotgun,"

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Anthony Cordova's Amended Motion to Strike Question 54(c) from Supplemental Jury Questionnaire, filed May 17, 2018 (Doc. 644)("54(c) Motion"). The Court held a hearing on June 14, 2018. See Clerk's Minutes at 1, filed June 14, 2018 (Doc. 743). The primary issue is whether the Court should strike from the Supplemental Juror Questionnaire, filed January 10, 2019 (Doc. 947)("<u>Baca</u> SJQ"), question 54(c), which asks prospective jurors whether they "would be in fear of retaliation if [they] came to a decision to vote guilty." 54(c) Motion at 1 (internal quotation marks omitted)(quoting <u>Baca</u> SJQ ¶ 54(c), at 13). Because the Court mailed the <u>Baca</u> SJQ to the venire before Defendant Anthony Cordova filed the 54(c) Motion and, because the Court cannot say that question 54(c)

will prejudice Cordova and Defendant Vincent Garduño -- who, by the June 14, 2018, hearing, were the only United States v. Baca ("Baca") Defendants[1] planning to proceed to trial, the Court will not strike question 54(c). At the hearing, Cordova and Garduño requested that the Court allow them to address in voir dire the potential jurors' fears regarding retaliation. See Transcript of Hearing at 243:20-22 (taken June 14, 2018), filed July 3, 2018 (Doc. 771)(Morrissey)("June 14 Tr."). During voir dire, the Court will allow Cordova and Garduño to address such fears, and, if Cordova and Garduño desire to speak with potential jurors individually, the Court will allow Cordova and Garduño to speak individually with potential jurors. Accordingly, the Court will grant Cordova and Garduño's requests in part and deny them in part.

## FACTUAL BACKGROUND

The Court recounts the factual background and early procedural history in its Memorandum Opinion and Order at 2-4, 2018 WL 5980443, at *1-2, filed November 14, 2018 (Doc. 932)("MOO"). The Court incorporates that recitation here. The Court includes the footnotes from the MOO.

> The Court takes its background facts from the Superseding Indictment, filed March 9, 2017 (Doc. 372)("Indictment"). The Court does not set forth these facts as findings or for their truth. The Court recognizes that the factual background is largely the Plaintiff United States of America's version of events and that the [Baca] Defendants who have not pled guilty are all presumed innocent.
>
> This case deals with the crimes that the . . . [Syndicato de Nuevo Mexico ("SNM")] . . . allegedly committed through its members. See Indictment ¶¶ 1, 3, at 1-2. The SNM, through its members, operated in the District of New Mexico at all relevant times, and its members engaged in acts of violence and other criminal activities, "including, murder, kidnapping, attempted murder, conspiracy to manufacture/distribute narcotics, and firearms trafficking." Indictment ¶ 1, at 2. The SNM constitutes an enterprise "as defined in Title 18, United States Code,

---

[1]Anthony Ray Baca, Christopher Garcia, Daniel Sanchez, Arturo Arnulfo Garcia, Manuel Jacob Armijo, Frederico Munoz, Sergio Loya Rodriguez, Manuel Benito, Vincent Garduño, Mandel Lon Parker, Daniel Archuleta, and Anthony Cordova.

Sections 1959(b)(2) and 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected interstate and foreign commerce." Indictment ¶ 2, at 2. The enterprise is "an ongoing organization whose members/prospects/associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise." Indictment ¶ 2, at 2.

The SNM is a prison gang formed in the early 1980s at the Penitentiary of New Mexico ("PNM") after a violent prison riot at PNM during which inmates seriously assaulted and raped twelve correctional officers after taking them hostage. See Indictment ¶ 3, at 2. During the riot, thirty-three inmates were killed, and over 200 were injured. See Indictment ¶ 3, at 2. After the PNM riot, the SNM expanded throughout the state's prison system and has had as many as 500 members. See Indictment ¶ 4, at 2. The SNM now has approximately 250 members, and "a 'panel' or 'mesa' (Spanish for ["]table["]) of leaders who issue orders to subordinate gang members." Indictment ¶ 4, at 2-3. The SNM controls drug distribution and other illegal activities within the New Mexico penal system, but it also conveys orders outside the prison system. See Indictment ¶¶ 3, 5, at 2-3. Members who rejoin their communities after completing their sentences are expected to further the gang's goals, the main one being the control of and the profit from narcotics trafficking. See Indictment ¶ 5, at 3. The SNM also intimidates and influences smaller New Mexico Hispanic gangs to expand its illegal activities. See Indictment ¶ 6, at 3. If another gang does not abide by the SNM's demands, the SNM will assault or kill one of the other gang's members to show its power. See Indictment ¶ 6, at 3. The SNM's rivalry with other gangs also manifests itself in beatings and stabbings within the prison system. See Indictment ¶ 7, at 4. The SNM further engages in violence "to assert its gang identity, to claim or protect its territory, to challenge or respond to challenges, to retaliate against a rival gang or member, [and] to gain notoriety and show its superiority over others." Indictment ¶ 7, at 4. "Similarly, a member of the SNM Gang is expected to confront and attack any suspected law enforcement informants, cooperating witness[es], homosexuals, or sex offenders." Indictment ¶ 8, at 4. To achieve its purpose of maintaining power, the SNM uses intimidation, violence, threats of violence, assault, and murder. See Indictment ¶¶ 6-8, at 3-4. The SNM as an enterprise generates income by having its members and associates traffic controlled substances and extort narcotic traffickers. See Indictment ¶ 7, at 4. The SNM's recent activities in a conspiracy to murder high ranking New Mexico Corrections Department ["Corrections Department"] officials inspired the Federal Bureau of Investigation's [("FBI")] present investigation. See United States v. Garcia, 221 F. Supp. 3d 1275, 1277 (D.N.M. 2016)(Browning, J.).

MOO at 2-4; 2018 WL 5980443, at *1 (alterations added).

**PROCEDURAL BACKGROUND**

The FBI's SNM investigation resulted in this case and three other cases before the Court. See United States v. DeLeon, No. CR 15-4268 ("DeLeon"); United States v. Varela, No. CR 15-4269; United States v. Garcia, No. CR 15-4275. Of the other cases resulting from the FBI investigation, United States v. Varela and United States v. Garcia did not go to trial, but the Court held two trials in DeLeon. In the end, the Court held one four-defendant trial and one seven-defendant trial. Counsel participating in and preparing for the DeLeon trials included learned counsel, who had developed experience in capital cases. Across the two trials, the juries found eight of the eleven DeLeon Defendants guilty of violating Violent Crimes in Aid of Racketeering Activity, 18 U.S.C. §§ 1959 ("VICAR"). See DeLeon, No. CR 15-4268, Jury Verdict at 1-3, filed March 12, 2018 (Doc. 1947); DeLeon, No. CR 15-4268, Jury Verdict at 1-5, filed May 25, 2018 (Doc. 2332).

On April 21, 2016, a Grand Jury returned the original indictment in this case. See Original Indictment at 1, filed April 21, 2016 (Doc. 2). On March 9, 2017, a Grand Jury returned the Indictment, which superseded the original indictment. See Indictment at 1. Several DeLeon Defendants are charged in this case -- Anthony Ray Baca, Christopher ("Chris") Garcia, Daniel Sanchez, and Arturo Arnulfo Garcia. Compare Indictment at 1, with DeLeon, No. CR 15-4268, Second Superseding Indictment at 1, filed March 9, 2017 (Doc. 947). Count 1 of the Indictment charges eleven Baca Defendants -- Baca, Chris Garcia, Manuel Jacob Armijo, Frederico Munoz, Sergio Loya Rodriguez, Manuel Benito, Vincent Garduño, Mandel Lon Parker, Daniel Archuleta, Sanchez, and Arturo Garcia -- with engaging in a racketeering conspiracy contrary to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68. See Indictment at 8-9. Count 2 alleges that Chris Garcia and Cordova committed murder on or about February 4,

2005, in violation of VICAR.  <u>See</u> Indictment at 54.  Count 3 charges Cordova with using and

carrying a firearm in relation to the crime charged in Count 2, in violation of 18 US.C. §§ 924(c),

(j)(1), respectively, using a firearm during a violent crime and using a firearm to cause a person's

death.  <u>See</u> Indictment at 54.

### 1.     The Supplemental Juror Questionnaire.

The <u>DeLeon</u> Defendants planning to proceed to trial as of November 6, 2017 -- Joe

Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Chris Chavez, Arturo Garcia, Sanchez,

Baca, Chris Garcia, Carlos Herrera, Andrew Gallegos, and Shauna Gutierrez -- initiated having a

supplemental juror questionnaire.[2]  <u>See</u> Motion for Statewide Jury Pool and Supplemental Jury

Questionnaire at 1, filed November 6, 2017 (Doc. 1408).  The <u>DeLeon</u> Defendants noted that such

a supplemental juror questionnaire would streamline voir dire and would be a preferable medium

through which to inquire into sensitive topics, like the violent and high-profile crimes that SNM

committed.  <u>See</u> Motion for Statewide Jury Pool and Supplemental Jury Questionnaire at 6-7.  The

<u>DeLeon</u> Defendants attached the Supplemental Juror Questionnaire, filed November 6, 2017

(Doc. 1408-2)("<u>DeLeon</u> Defendants' Proposed SJQ").  The <u>DeLeon</u> Defendants' Proposed SJQ

---

[2]When the Court empanels a jury, jury services sends a qualifying questionnaire to the venire and a juror questionnaire to the venire.  The Court, in special circumstances, will also send a supplemental, or special, juror questionnaire to the venire.  Supplemental juror questionnaires further screen potential jurors, and the Court uses such questionnaires when the Court and the parties are particularly concerned whether the case's facts or external factors, like publicity, will influence jurors.  <u>See</u> <u>Equal Emp't Opportunity Comm'n v. BOK Fin. Corp.</u>, No. CIV 11-1132 RB/LAM, 2014 WL 12628594, at *1-2 (D.N.M. March 20, 2014)(Browning, J.)(noting that the Court uses supplemental juror questionnaires when a case involves personal, sensitive, or controversial matters, and citing <u>Lowery v. City of Albuquerque</u>, No. CIV 09-0457 JB/WDS, 2012 WL 1372273 (D.N.M. April 11, 2012)(Browning, J.)(involving governmental authority, drug use, health risks); <u>United States v. Sandoval</u>, No. CR 04-2362 JB, 2006 WL 1304955 (D.N.M. Feb. 1, 2006)(Browning, J.)(involving incest, sexual abuse of child)).

includes as question 58: "If the charges are proven beyond a reasonable doubt, would you have any concerns about convicting the Defendant?  Would you be in fear of retaliation if, after hearing the evidence and the instructions of the court, you came to a decision to vote guilty?"  See DeLeon Defendants' Proposed SJQ ¶ 58, at 13.  The United States objected to the DeLeon Defendants' Proposed SJQ, see Motion for Statewide Jury Pool and Supplemental Jury Questionnaire at 3, but it did not file a response to the Motion for Statewide Jury Pool and Supplemental Jury Questionnaire before the DeLeon Defendants raised the issue of a supplemental juror questionnaire at the November 8, 2016, hearing.  See Transcript of Hearing at 152:12-153:10 (taken November 8, 2016), filed November 20, 2017 (Doc. 1456)(Villa, Court)("Nov. 9 Tr.").

At the hearing, after a lengthy discussion about having a supplemental juror questionnaire, see Nov. 9 Tr. at 152:12-153:10 (Villa, Court); id. at 156:16-162:21 (Villa, Court, Sirignano, Blackburn, Cooper); id. at 164:8-166:9 (Court, Armijo); id. at 173:6-176:8 (Court, Castellano), the Court asked that, by November 20, 2016, the United States file a response objecting to having a supplemental juror questionnaire or that, by November 22, 2016, the parties submit a joint proposal for a supplemental juror questionnaire, see Nov. 9 Tr. at 178:6-179:22 (Court).  The Court stated that the parties could submit a supplemental juror questionnaire on which they indicate the questions that they dispute and that the parties could write to the Court for or against the disputed questions.  See Nov. 9 Tr. at 178:24-179:13 (Court).  The Court explained that it would determine whether to include the disputed questions.  See Nov. 9 Tr. at 179:12-13 (Court).

On November 17, 2017, the DeLeon Defendants emailed the Court and attached the Supplemental Juror Questionnaire, filed November 22, 2017 (Doc. 1470)("DeLeon Final Proposed SJQ"), with the disputed questions bolded and italicized, see Email from Ryan Villa to Chambers of James Browning at 1 (sent November 17, 2017), filed November 22, 2017

(Doc. 1470)("First DeLeon SJQ Email"). The DeLeon Final Proposed SJQ includes as question 58 the question from the DeLeon Defendants' Proposed SJQ: "If the charges are proven beyond a reasonable doubt, would you have any concerns about convicting the Defendant? Would you be in fear of retaliation if, after hearing the evidence and the instructions of the court, you came to a decision to vote guilty?" DeLeon Final Proposed SJQ, ¶ 58, at 14. The DeLeon Defendants indicated that the parties disagreed about questions 43-45, 51, 68, and 72(b), but not about question 58. See DeLeon SJQ Email at 1. The Court mailed to the venire the Supplemental Juror Questionnaire Trial 1, filed January 10, 2019 (Doc. 2486)("First DeLeon SJQ"), with question 58 included.

For the second DeLeon trial, the Court provided the parties with the First DeLeon SJQ as a starting point for the Second DeLeon SJQ. The parties made minor changes to the First DeLeon SJQ, but the Supplemental Juror Questionnaire for Trial 2, filed January 10, 2019 (Doc. 2487)("Second DeLeon SJQ"), is substantially similar to the First DeLeon SJQ. The parties agreed to a Second DeLeon Final Proposed SJQ. The Second DeLeon Final Proposed SJQ broke the First DeLeon SJQ's question 58 into two parts. The Second DeLeon Final Proposed SJQ's question 57 asks: "If the charges are proven beyond a reasonable doubt, would anything prevent you from convicting any or all of the Defendants?" Second DeLeon SJQ ¶ 57, at 14. The Second DeLeon Final Proposed SJQ's question 58 asks "Would you be in fear of retaliation if you came to a decision to vote guilty?" Second DeLeon SJQ ¶ 58, at 14. Nothing indicates that the parties disputed question 58, and the Second DeLeon SJQ, which the Court mailed to the venire, includes those questions 57 and 58. See Second DeLeon SJQ ¶ 57-58, at 14.

To begin the drafting for the Baca SJQ, the Court provided the parties the supplemental juror questionnaire from the DeLeon trials. The Court requested that the parties submit their final

proposed SJQs by May 2, 2018, and indicated that, on May 11, 2018, it would mail to the venire the Baca SJQ. The parties had agreed to begin the trial on July 9, 2018. See Unopposed Motion for Third Scheduling Order and in Support of Unopposed Motion to Continue at 2, filed June 9, 2017 (Doc. 435). The Baca SJQ would be mailed around eight weeks before trial. The parties would receive the Baca SJQ responses in three batches -- on June 6, 2018; on June 13, 2018; and on June 20, 2018.

On May 2, 2018, and in the fourth week of the Second DeLeon trial, Garduño, on behalf of the Baca Defendants -- Baca, Rodriguez, Benito, Garduño, Parker, Archuleta, Sanchez, Arturo Garcia, and Cordova -- emailed the Court and transmitted the United States' and the Baca Defendants' Final Proposed SJQs.[3] See Email from Diego Esquibel to the Court (sent May 2, 2018), filed May 3, 2018 (Doc. 604)("Baca Email"). The Baca Defendants' Final Baca Proposed SJQ does not contain question 54(c). See Supplemental Juror Questionnaire at 15, filed May 3, 2018 (Doc. 604-1). The United States' Baca Final Proposed SJQ contains question 54(c). See Supplemental Juror Questionnaire at 16, filed May 3, 2018 (Doc. 604-2). Garduño indicates the Baca Defendants' disagreement with question 54(c) and asks that the Court omit question 54(c) from the Baca SJQ. See Baca Email at 2. Garduño notes that no threats of retaliation have been made, and that question 54(c) "seems like an attempt to focus negative attention at the defendants and places a thought in people's minds that they could be in danger, which is not the case." Baca Email at 2. The Court mailed the Baca SJQ to the venire -- 2,000 people -- on May 11, 2018. The Baca SJQ included question 54(c). See Baca SJQ, ¶ 54(c), at 15.

_____

[3]The other Baca Defendants pled before Garduno sent the email. See Plea Agreement, filed September 22, 2016 (Doc. 229)(Munoz); Plea Agreement, filed March 1, 2017 (Doc. 368)(Armijo); Plea Agreement, filed January 25, 2018 (Doc. 503)(Chris Garcia).

The Baca SJQ is substantially similar to the First and Second DeLeon SJQs. Compare Baca SJQ with First DeLeon SJQ; Second DeLeon SJQ. The Baca SJQ covers a broad array of topics, and it does not conceal that the trial involves the SNM or violent crimes. See Baca SJQ ¶ 1-77, at 3-19. The Baca SJQ begins with questions on the potential jurors' backgrounds -- jobs, family, education, experience with law enforcement, political affiliations, and news consumption. See Baca SJQ ¶ 1-28, at 3-8. The Baca SJQ then includes a section on "Crime and Gangs," Baca SJQ at 8, in which the Baca SJQ contains questions such as: "[w]hat have you read or heard about gang activity in New Mexico?", Baca SJQ ¶ 30, at 9; "[w]hat have you read or heard about gang involvement in drugs in New Mexico?", Baca SJQ ¶ 30(a), at 9, and "[h]ave you, your family or close friends been affected in any way by gang activity, including being a member of a gang or recruited by a gang?", Baca SJQ, ¶ 32, at 9. A section on "Criminal Justice Experience" includes the questions: "[w]hat have you seen, read or heard about violence between prisoners, and what prisoners do to protect themselves?", Baca SJQ ¶ 39, at 10; "[w]hat have you seen, read or heard about violence between prisoners and prison guards/correction officers?", Baca SJQ ¶ 39(a) at 10; and "[w]hat have you seen, read or heard about gangs in prisons", Baca SJQ ¶ 39(b) at 11. A section on "Racial Questions" contains questions asking jurors to state their opinions whether, among other things: "Hispanic men are more likely to commit drug offenses than non-Hispanic men," "Hispanic men are more likely than non-Hispanic men to commit violent crimes"; and "Hispanic men are more likely to participate in gangs than non-Hispanic men." Baca SJQ ¶ 48(b)-(d), at 14. Questions on the "Criminal Justice System" include question 54, which asks potential jurors whether they agree that:

> If a person who is brought to trial is a member of a prison gang, and that gang is allegedly involved in murder, assault and drug trafficking: . . . (a) There must be some truth to the charges against the individual person . . . (b) That individual

person brought to trial is likely guilty . . . (c) I would be in fear of retaliation if I came to a decision to vote guilty.

Baca SJQ, ¶ 54, at 15. Under a heading titled "Nature of Evidence and Charged Crimes," the Baca SJQ states: "[t]his case involves allegations that members, prospects and associates of Sindicato de Nuevo Mexico/ Syndicato de Nuevo Mexico ("SNM") were engaged in acts of violence and other criminal activity." Baca SJQ at 15. The same section includes questions asking: "[b]ased on what you have read, seen or heard, have you formed an opinion about the guilt of the individual defendants in this case; charged with crimes allegedly committed by the SNM?", Baca SJQ ¶ 63(d), at 18; "[i]n such a case, where there are allegations such as conspiracy to murder, murder and drug trafficking, will you be able to keep an open mind until you have heard all the evidence, the arguments of attorneys for both sides and the judge's instructions?", Baca SJQ ¶ 65, at 18; "[t]here may be evidence that victims in this case may be gang members. Will the fact that a victim may be a gang member affect your ability to render a guilty verdict?", Baca SJQ ¶ 71, at 20; and

> The prosecution will likely introduce into evidence graphic photographs and video recordings of the crimes charged that, as a juror, you would be required to view. These photographs and recordings will not only show the location of the crime, but the traumatic injuries that the victims suffered. . . . Knowing your own sensibilities, do you feel it is possible you would be unable to look at such photographs and video recordings at all, if they were part of the evidence?

Baca SJQ ¶¶ 70, 70(a), at 19. The Baca Defendants filed the 54(c) Motion on May 17, 2018. See 54(c) Motion at 3.

### 2.    The Peremptory Challenges Motion.

In the United States' Response to Anthony Cordova's Amended Motion to Strike [Doc. 644], filed May 29, 2018 (Doc. 664)("54(c) Response"), and the Defendants' Reply to Response to Amended Motion to Strike Question 54(c) from Supplemental Jury Questionnaire,

filed June 5, 2018 (Doc. 687)("54(c) Reply"), the United States and the <u>Baca</u> Defendants incorporate, respectively, their United States' Response to Sealed, Opposed Motion for Additional Peremptory Challenges [Doc. 620], filed May 29, 2018 (Doc. 659)("Peremptory Challenges Response"), and Reply to Response to Motion for Additional Peremptory Challenges, filed June 5, 2018 (Doc. 686)("Peremptory Challenges Reply"). The Court, accordingly, summarizes the Sealed, Opposed Motion for Additional Peremptory Challenges, filed May 14, 2018 (Doc. 620)("Peremptory Challenges Motion"), for context. On May 14, 2018, Cordova, joined by Baca, Rodriguez, Benito, Garduño, Parker, Archuleta, Sanchez, and Arturo Garcia, filed the Peremptory Challenges Motion. <u>See</u> Peremptory Challenges Motion at 8. In the Peremptory Challenges Motion, the <u>Baca</u> Defendants ask that the Court give each Defendant four additional peremptory challenges. <u>See</u> Peremptory Challenges Motion at 3. The <u>Baca</u> Defendants contend that the case's complexity, number of Defendants, and publicity; the "divergent interests among the defendants," and Cordova's interest in defending against Counts 2 and 3, for which the Court could sentence him to life in prison, support the request for additional peremptory challenges. Peremptory Challenges Motion at 3. The <u>Baca</u> Defendants request that the Court not grant the United States additional peremptory challenges. <u>See</u> Peremptory Challenges Motion at 7.

     **3.**       **<u>The 54(c) Motion</u>.**

     Cordova filed the 54(c) Motion, and Garduño, Parker, Archuleta, and Sanchez join the 54(c) Motion. <u>See</u> 54(c) Motion at 1. Arturo Garcia does not object to the motion, and Baca and Chris Garcia did not respond to Cordova's request that they join the Motion. <u>See</u> 54(c) Motion at 1. The <u>Baca</u> Defendants argue that question 54(c) "is inflammatory and prejudicial," because "it interjects the specter of retaliation . . . against a juror who votes guilty." 54(c) Motion at 2. The <u>Baca</u> Defendants argue that no evidence suggests that retaliation might occur against jurors and

that the "questionnaire adds legitimacy to any inchoate concern a juror may have regarding retaliation." 54(c) Motion at 2. The <u>Baca</u> Defendants note that a counterbalancing question would be whether a juror "would be in fear of retaliation by law enforcement -- the FBI, United States Attorney's Office, local law enforcement -- if I came to a decision to vote not guilty." 54(c) Motion at 2 (internal quotation marks omitted). The <u>Baca</u> Defendants request that the Court remove question 54(c) from the <u>Baca</u> SJQ, or, alternatively, allow the <u>Baca</u> Defendants "expanded voir dire and additional peremptory challenges" to counterbalance the question. 54(c) Motion at 2.

4.    <u>The 54(c) Response.</u>

In the 54(c) Response, the United States notes that the Court mailed the <u>Baca</u> SJQs to the venire on May 11, 2018, before the <u>Baca</u> Defendants filed the Motion. <u>See</u> 54(c) Response at 1. According to the United States, the Motion, accordingly, is moot. <u>See</u> 54(c) Response at 1. In response to the <u>Baca</u> Defendants' alternative request, the United States incorporates the arguments from the Peremptory Challenges Response. <u>See</u> Response at 1.

In the Peremptory Challenges Response, the United States contends that, in <u>DeLeon</u>, the Court denied a request for additional peremptory challenges, because "three additional peremptory challenges multiplied by the number of defendants remaining at that time would make it impossible to pick a jury." Peremptory Challenges Response at 1 (citing <u>DeLeon</u>, No. CR 15-4268 JB, Transcript of Hearing at 110-114 (taken November 27, 2017), filed December 6, 2017 (Doc. 1545)(Court)("Nov. 27 Tr.")). The United States calculates that the four additional peremptory challenges per Defendant would add "thirty-six additional peremptory challenges for the defendants." Peremptory Challenges Response at 1. The United States notes that, although the Court indicated that it would revisit the decision to deny additional peremptory challenges if the number of defendants in <u>DeLeon</u> decreased, the Court did not indicate that it would certainly

allow additional peremptory challenges when a case involves fewer defendants.  See Peremptory Challenges Response at 1-2 (citing Nov. 27 Tr. at 110-114).

### 5. **The 54(c) Reply.**

The Baca Defendants replied to the 54(c) Response.  See 54(c) Reply.  The Baca Defendants note that they did not file the 54(c) Motion until after the Court mailed the Baca SJQs to the venire, because Cordova did not receive the Baca SJQ until "May 10, 2018, at 5:51:56 p.m. PST."  54(c) Reply at 1.  The Baca Defendants stated that they filed the 54(c) Motion objecting to the Baca SJQ to preserve the issue for review.  See 54(c) Reply at 1-2 (citing United States v. Overstreet, 40 F.3d 1090, 1093 (10th Cir. 1994)).  The Baca Defendants admit that editing the Baca SJQ and submitting new supplemental jury questionnaires to "a new group of prospective jurors" "would be costly."  54(c) Reply at 2.  The Baca Defendants, accordingly, alternatively request additional peremptory challenges so that the Baca Defendants may "identify and excuse jurors who have been improperly influenced by the question at issue."  54(c) Reply at 2.

The Baca Defendants incorporate in full the Peremptory Challenges Reply.  See 54(c) Reply at 2.  In the Peremptory Challenges Reply, the Baca Defendants contend that the United States fails to consider the case's "unique circumstances."  Peremptory Challenges Reply at 1.  The Baca Defendants argue that, although the number of Baca Defendants will lengthen the jury selection, the numbers will not make selecting a jury impossible, and no caselaw supports an argument that the number of defendants determines additional peremptory challenges' availability. See Peremptory Challenges Reply at 1.  The Baca Defendants aver that the United States' desire to quickly choose a jury should not "trump" the Defendants' "rights to due process and a fair trial by an impartial jury under the Fifth and Sixth Amendments."  Peremptory Challenges Reply at 2. The Baca Defendants note that, by the time the Court hears the Peremptory Challenges Motion,

the number of defendants "will have decreased by two."  Peremptory Challenges Reply at 2 (citing Notice of Hearing as to Daniel Archuleta, Change of Plea Hearing, filed May 31, 2018 (Doc. 672); Notice of Hearing as to Mandel Lon Parker, Change of Plea Hearing, filed June 1, 2018 (Doc. 673)).

        6.      **The Hearing.**

    At the hearing on June 14, 2018, Cordova and Garduño -- the <u>Baca</u> Defendants as of the hearing planning to proceed to trial -- repeated their argument that question 54(c) "interjects something pretty inflammatory without a factual basis" and "plants in the minds of the jurors that there may be retaliation if they vote guilty."  June 14 Tr. at 243:8-15 (Morrissey).  Cordova and Garduño pointed to a <u>Baca</u> SJQ response, in which a potential juror answering question 54(c) indicated, "yes," "I would be in fear of retaliation if I came to a decision to vote guilty," and wrote, "I am now that you ask.  Aren't jurors' identities confidential?"  June 14 Tr. at 243:20-23 (Morrissey).  Cordova and Garduño initially requested "expanded voir dire, and extra peremptory challenges" to counterbalance question 54(c).  June 14 Tr. at 244:5-6 (Morrissey).

    The Court indicated that the Court, the United States, and the <u>DeLeon</u> Defendants had addressed the jurors' fears regarding retaliation in the <u>DeLeon</u> trials and that the <u>DeLeon</u> Defendants wanted to question the potential jurors on the fears-regarding-retaliation issue more than the United States wanted to question the potential jurors on the issue.  <u>See</u> June 14 Tr. at 244:10-15 (Court).  The Court stated that it was unsure whether the United States or the <u>DeLeon</u> Defendants had initially written question 54(c).  <u>See</u> June 14 Tr. at 244:15-18 (Court).  The Court noted that the fears-regarding-retaliation issue raised a "two-edged sword" and that some defendants had chosen to avoid the issue, because "it just puts things into [the jurors'] mind."  June 14 Tr. at 244:13 (Court).  <u>See</u> <u>id.</u> at 244:19-23 (Court).

Cordova and Garduño indicated that the Baca Defendants did not include question 54(c) in their Baca Defendants' Final Baca Proposed SJQ, and that Cordova and Garduño would have avoided the question entirely. See June 14 Tr. at 245:1-4 (Morrissey). The Court questioned whether Cordova and Garduño were sure that they had not included the question in the Baca Defendants' Final Baca Proposed SJQ, and Cordova and Garduño explained that the United States and the Baca Defendants "were supposed to agree on a questionnaire, or agree to disagree about portions of the questionnaire," but, the United States transmitted its edits to the Baca Defendants at 4:00 p.m. on May 2, 2018, which was the deadline for submitting the final proposed supplemental juror questionnaire. See June 14 Tr. at 245:7-14 (Morrissey). Cordova and Garduño explained that, while they were trying to "work out our objections" to the United States' Final Baca Proposed SJQ, the Court was asking for the final proposed supplemental juror questionnaires, and the Baca Defendants transmitted both the United States' Final Baca Proposed SJQ and the Defendants' Final Baca Proposed SJQ. June 14 Tr. at 245:17 (Morrissey). See June 14 Tr. at 245:16-23 (Morrissey). The Court indicated that it remembered Garduño objecting to "a handful of questions" but that 54(c) "was not one of the ones that there was an objection from." June 14 Tr. at 245:1-2 (Court); id. at 245:1-3 (Court). Garduño replied that he remembered objecting in the Baca Email to question 54(c) and asking in the Baca Email that the Court omit question 54(c) from the final supplemental juror questionnaire. See June 14 Tr. at 246:771:5-20 (Esquibel). In response to the Court's request, Garduño read the Baca Email's language. See June 14 Tr. at 246:21-15 (Court, Esquibel).

The Court asked what relief Cordova and Garduño sought, and Cordova and Garduño asked for expanded voir dire to address potential jurors' fears regarding retaliation. See June 14 Tr. at 248:12-21 (Court, Morrissey). Cordova and Garduño noted that they may have a better "idea

of how problematic" question 54(c) is after they "finish reading all the questionnaires." June 14 Tr. at 249:1 (Morrissey). See June 14 Tr. at 248:24-249:1 (Morrissey). The Court replied that any juror, after realizing the case's subject, would wonder about personal safety. See June 14 Tr. at 249:2-11 (Court). The Court further noted that question 54(c) might not disadvantage Cordova and Garduño, because question 54(c) might prompt jurors to fear retaliation for voting against Cordova and Garduño. See June 14 Tr. at 12-21 (Court). Cordova and Garduño admitted that question 54(c) might raise more problems for the United States than for them. See June 14 Tr. at 249:22-25 (Morrissey). The Court explained that it had wondered whether the Baca Defendants wanted question 54(c) in the Baca SJQ, because, during voir dire, the DeLeon Defendants had "spent a long time on" the jurors' fears regarding retaliation. June 14 Tr. at 250:1-14 (Court). Cordova and Garduño stated that different defense attorneys had different preferences, and clarified for the Court that Cordova and Garduño would address the prejudice through voir dire. See June 14 Tr. at 250:15-23 (Court, Morrissey). Cordova and Garduño further noted that they posed no danger of retaliation, and asked that the Court include in its voir dire language stating that no threats of retaliation had been made. See June 14 Tr. at 251:5-252:24 (Morrissey).

The United States interjected that the DeLeon Defendants had questioned the potential jurors about fears regarding retaliation, and that the Court, the United States, and the DeLeon Defendants had still chosen a fair jury. See June 14 Tr. at 252:8-15 (Armijo). The United States objected to the Court commenting on the fears-regarding-retaliation issue, because a threat of retaliation against jurors had arisen at the second DeLeon trial. See June 14 Tr. at 252:23-254:4(Armijo). The United States stated that Cordova and Garduño should address question 54(c) through voir dire, and by reviewing the Baca SJQ responses, and bringing responses indicating potential jurors' biases to the Court's and the United States' attentions. See June 14 Tr. at 254:16-

254:4 (Armijo). The Court admitted that addressing potential jurors' biases is difficult, because counsel cannot know what potential jurors are thinking. See June 14 Tr. at 254:5-254:21 (Court). Cordova and Garduño agreed with the Court that "you just can't let [the fears-regarding-retaliation issue] be the silent 800-pound elephant in the room. You've got to bring it out." June 14 Tr. at 254:25-255:1 (Morrissey). See id. at 254:22-255:1 (Morrissey). The Court agreed that Cordova and Garduño might particularly want to address fears regarding retaliation if a juror indicates in his or her Baca SJQ response that he or she has such fears, and the Court noted that Cordova and Garduño might want the Court to bring such individuals "up individually so you can talk to them without polluting the rest of the jurors." June 14 Tr. at 255:13-14 (Court). See id. at 255:2-19 (Court). Cordova and Garduño noted that whether they wanted to speak with the potential jurors individually or as a group depends on the Baca SJQ responses. See June 14 Tr. at 255:23-256:1 (Morrissey). The Court indicated that, at the DeLeon trials, some potential jurors had indicated that they feared retaliation but not every potential juror had stated that they feared retaliation. See June 14 Tr. at 256:2-9 (Court). The Court indicated that it would not strike question 54(c) or "impanel new jurors." June 14 Tr. at 257:18-20 (Court). The Court further indicated that it thought "it's probably better to go ahead and have that information out on the table, and then we'll just deal with it as we get into trial." June 14 Tr. at 256:25-257:3 (Court).

## LAW REGARDING JURY SELECTION

"To be meaningful, the adequacy of voir dire examination must allow a party an opportunity to make reasonably intelligent use of peremptory challenges and challenges for cause." Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2012 WL 1372273, at 4 (D.N.M. April 11, 2012)(Browning, J.)(citing United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977)). "[V]oir dire is within the sound discretion of the trial court, and the court's exercise

of that discretion will not be disturbed, absent a clear showing of abuse." United States v. Whitt, 718 F.2d 1494, 1497 (10th Cir. 1983). See United States v. Gibbons, 607 F.2d 1320, 1330 (10th Cir. 1979)("The trial court has broad discretion in conducting the voir dire examination."). "[D]istrict courts have broad discretion in fashioning the method of exercising peremptory challenges, and the jury selection procedure in general." United States v. Morris, 623 F.2d 145, 151 (10th Cir. 1980). "The Court generally reserves supplemental juror questionnaires for cases directly implicating sensitive, personal, or controversial issues." Equal Emp't Opportunity Comm'n v. BOK Fin. Corp., No. CIV 11-1132 RB/LAM, 2014 WL 12628594, at *1-2 (D.N.M. March 20, 2014)(Browning, J.)(citing Lowery v. City of Albuquerque, 2012 WL 1372273 (involving governmental authority, drug use, health risks); United States v. Sandoval, No. CR 04-02362 JB, 2006 WL 1304955 (D.N.M. Feb. 1, 2006)(Browning, J.)(involving incest, sexual abuse of child)). See United States v. Vigil, No. CR 05-2051 JB, 2007 WL 505687, at *4 (D.N.M. Jan. 10, 2007)(Browning, J.)(noting that the Court used an extensive juror questionnaire and involving a governmental figure).

## ANALYSIS

The Court grants Cordova and Garduño's request for expanded voir dire. The Court will not mail a new Baca SJQ to a new venire, impanel a new venire, grant Cordova and Garduño additional peremptory challenges, or include language about retaliation in the Court's voir dire questioning. As the Court and the parties discussed at the hearing, the Court will allow Cordova and Garduño to question potential jurors individually should Cordova and Garduño desire to engage in such questioning.

At the hearing, the Court and the parties reduced Cordova and Garduño's requests for relief to a request for expanded voir dire. The Baca Defendants acknowledged in the 54(c) Motion that,

if the Court mailed a new supplemental juror questionnaire to a new venire, the Court would incur substantial cost, see 54(c) Reply at 2, and Cordova and Garduño did not press their request for the Court to strike question 54(c) and to take the subsequent steps to impanel a new venire, see June 14 Tr. at 248:12-21 (Court, Morrissey). Cordova and Garduño also did not pursue their request for peremptory challenges; when the Court asked what relief Cordova and Garduño sought, Cordova and Garduño narrowed their request to expanded voir dire. See June 14 Tr. at 248:12-21 (Court, Morrissey).

The Court will grant Cordova and Garduño expanded voir dire to handle the fears-regarding-retaliation issue. "The Court's goals are to make voir dire as efficient as possible and to permit the parties to inquire into potential biases which they feel may lead to an impartial jury." Lowery v. City of Albuquerque, 2012 WL 1372273, at *5. By allowing Cordova and Garduño to address question 54(c) in voir dire, the Court will best enable Cordova and Garduño to achieve these ends. As Cordova and Garduño indicated at trial, different defense attorneys will approach differently potential jurors' fears regarding retaliation. See June 14 Tr. at 250:15-23 (Court, Morrissey). Cordova and Garduño can finish reviewing all of the Baca SJQ responses, and develop their preferred strategy for voir dire and the fears-regarding-retaliation issue accordingly. The Court will allow Cordova and Garduño to speak with potential jurors individually if Cordova and Garduño decide that individual voir dire questions rather than group voir dire questions will best achieve Cordova's and Garduño's goals.

Moreover, the Court will not strike question 54(c), distribute a new Baca SJQ, or impanel a new venire. The Court agrees that supplemental juror questionnaires require additional costs and "extensive planning." Sec'y & Exch. Comm'n v. Goldstone, No. CIV 12-0257 JB/GBW, 2016 WL 4010068, at *8 (D.N.M. June 27, 2016)(Browning, J.). Jury services "must gather data and

calculations to estimate the percentages of: questionnaires sent out but returned as undeliverable by mail, questionnaires sent to unqualified individuals, people who fail . . . to respond, and people who fail . . . to appear." Sec'y & Exch. Comm'n v. Goldstone, 2016 WL 4010068, at *8. For the Baca trial, jury services mailed 2,000 Baca SJQs and required that the Court allow around eight weeks between mailing the Baca SJQs to the venire and beginning the trial. Question 54(c) might not even prejudice Cordova and Garduño. The fears-regarding-retaliation issue might work in Cordova's and Garduño's favors. If the issue hurts anyone, the issue hurts the United States, because a juror might decide to acquit -- not convict -- based on the fear. Some DeLeon Defendants focused on the fears-regarding-retaliation issue during voir dire. Moreover, after learning that the trial involves the SNM -- a fact that is clear from the Baca SJQ, some potential jurors likely have some fears regarding retaliation. Whether to address the fears-regarding-retaliation issue is the parties' decision,[4] but the parties may likely desire to confront the issue eventually, and drawing the issue into the forefront early in the trial does little harm. Cordova and Garduño agree with the Court that "you just can't let [the fears-regarding-retaliation issue] be the silent 800-pound elephant in the room. You've got to bring it out." June 14 Tr. at 254:25-255:1 (Morrissey).

The Court will also not grant the other requests for relief that Cordova and Garduño suggest. The Court will not allow Cordova and Garduño additional peremptory challenges. Although, with only two Baca Defendants remaining, granting additional peremptory challenges might slow voir dire less than expanding voir dire will, the Court does not deem additional peremptory challenges necessary to address the fears-regarding-retaliation issue. Neither the Court nor the parties can say that question 54(c) likely biased the potential jurors against Cordova

---

[4]Such decisions about whether to address potential jurors' possible biases are what makes voir dire difficult. Lawyers can never know what is in the potential jurors' minds.

and Garduño.  Question 54(c) might not evoke responses from many potential jurors and might bias potential jurors in Cordova's and Garduño's favors.  The Court will also not address retaliation in its voir dire questioning.  As the United States indicated, the second <u>DeLeon</u> trial raised specters of retaliation.  <u>See</u> June 14 Tr. at 252:23-254:15 (Armijo).  Specifically, there was evidence that SNM sent an SNM member to the trial to intimidate the jurors or that the SNM member came without SNM's direction to achieve the same end.  The Court, thus, will not state that a threat of retaliation did not arise at any time during the SNM trials, because such a statement would not be accurate.

The Court thinks the issue hurts the United States more than the it harms the <u>Baca</u> Defendants, but the Court does not believe it can preclude the parties from exploring it in voir dire. The jurors will naturally wonder if they are safe.  Even without question 54(c), the <u>Baca</u> SJQ's reader will know that the Court is summoning him or her for a trial involving SNM members.  The venire will know that SNM is a prison gang and that it engages in violence.  The venire knows that the parties will introduce some pictures at which looking will be hard.  United States Marshals will wear coats and ties in the courtroom.  The vans carrying the <u>Baca</u> Defendants will leave the courthouse without sirens or lights going.  Unless the <u>Baca</u> Defendants make the trial dangerous, the Court will not have officers visible around the courtroom except to transport cooperators serving as witnesses.  The Court will use bunting and tables so that the jury cannot see the chains on the <u>Baca</u> Defendants' legs.  The Court and its staff will show no hypersensitivity to security concerns.  The Court will tell the jury its travel plans, when it leaves, and details about its life to show the jury that it is not concerned.  The Court cannot evade, however, concern and the parties may need and want to explain that at the trial's start.  Accordingly, the Court grants Cordova and Garduño's requests in part and denies them in part.

**IT IS ORDERED** that: (i) Anthony Cordova's Amended Motion to Strike Question 54(c) from Supplemental Jury Questionnaire, filed May 17, 2018 (Doc. 644), is granted in part and denied in part; (ii) the Court will not mail new supplemental juror questionnaires to a new venire or impanel a new potential venire; (iii) the Court will not grant the Defendants Anthony Cordova and Vincent Garduño additional peremptory challenges; and (iv) the Court will allow Cordova and Garduño expanded voir dire, and will allow Cordova and Garduño to question potential jurors individually should Cordova and Garduño desire to engage in such questioning.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred Federici
  Attorney for the United States
    Acting Under Authority Conferred by 28 USC § 515
Albuquerque, New Mexico

--and--

John C. Anderson
  United States Attorney
Maria Ysabel Armijo
Randy M. Castellano
Matthew Beck
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

    *Attorneys for the Plaintiff*

Theresa M. Duncan
Duncan, Earnest, LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli, LLP
Albuquerque, New Mexico

*Attorneys for Defendant Anthony Ray Baca*

Christopher W. Adams
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant Christopher Garcia*

Todd Bruce Hotchkiss
Todd B. Hotchkiss, Attorney at Law, LLC
Albuquerque, New Mexico

*Attorney for Manuel Jacob Armijo*

Louis E. Lopez, Jr.
El Paso, Texas

*Attorney for Frederico Munoz*

Donald F. Kochersberger, III
Business Law Southwest, LLC
Albuquerque, New Mexico

*Attorneys for Sergio Loya Rodriguez*

Susan Burgess-Farrell
Barry G. Porter
Burgess & Porter Law, LLC
Albuquerque, New Mexico

*Attorneys for Manuel Benito*

Diego R. Esquibel
The Barnett Law Firm
Albuquerque, New Mexico

--and--

R. Scott Reisch
Reisch Law Firm, LLC
Denver, Colorado

     *Attorneys for Vincent Garduño*

Marc Grano
Grano Law Offices
Las Vegas, New Mexico

     *Attorney for Mandel Lon Parker*

James Baiamonte
Albuquerque, New Mexico

--and--

Ahmad Assed
Ahmad Assed & Associates
Albuquerque, New Mexico

     *Attorneys for Daniel Archuleta*

Lauren Noriega
The Noriega Law Firm
Los Angeles, California

--and--

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

     *Attorneys for Defendant Daniel Sanchez*

Marcia A. Morrissey
Santa Monica, California

--and--

Gregory M. Acton
Albuquerque, New Mexico

*Attorneys for Anthony Cordova*

Scott Moran Davidson
Albuquerque, New Mexico

--and--

Billy R. Blackburn
Albuquerque, New Mexico

*Attorneys for Defendant Arturo Arnulfo Garcia*